**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NOV 2 1 2007
ПОV 21 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

ROBERT DUNN,                        )
                                    )
                 Plaintiff,         )
                                    )
        v.                          )    07CV6601
                                    )    JUDGE MANNING
THE HARTFORD,                       )    MAG. JUDGE VALDEZ
                                    )
                 Defendant.         )

## COMPLAINT

Now comes the plaintiff, ROBERT DUNN, by his attorneys, DAVID A. BRYANT and

DALEY, DE BOFSKY & BRYANT, and complaining against the defendant, THE

HARTFORD, he states:

### Count I

### Jurisdiction and Venue

1.      This is an action between citizens of different states. The plaintiff is a citizen of

the State of Illinois. Defendant, The Hartford, is a citizen of Connecticut, with its principal place

of business in Hartford, Connecticut. The matter in controversy involves in excess of $75,000.00,

exclusive of interest and costs. Therefore, jurisdiction of the Court is invoked pursuant to 28

U.S.C. §1332.

2.      Venue is proper in this district since a substantial part of the events or omissions

giving rise to this claim occurred within the Northern District of Illinois. 28 U.S.C. §1391(a).

### Nature of Action

3. This is a claim for breach of a contract of disability income insurance issued by the

defendant to the plaintiff to provide monthly disability income benefits to plaintiff if he became

disabled. Plaintiff also alleges that defendant is guilty of unreasonable and vexatious delay in its refusal to pay disability income benefits to the plaintiff, and that plaintiff is entitled to recover penalties and attorneys' fees pursuant to 215 ILCS 5/155.

4.    The plaintiff, ROBERT DUNN ("Dunn"), DOB 06/02/1951, is a resident of Northbrook, Illinois.

5.    The defendant, The Hartford ("Hartford"), is an insurance company authorized and engaged in insurance business in the State of Illinois and in Cook County.

### Statement of Facts

6.    For and in consideration of premiums paid, Dunn received disability insurance coverage under a Group policy for members of B'nai Brith issued by the Hartford providing for payment of monthly indemnity of $1,200 a month in the event Dunn became "totally disabled." The Policy uses the following definition to determine disability:

> "Total Disability/Totally Disabled" means that, during the Elimination Period and the Insured Employee Occupation Period (24 months), the Insured, because of Injury or Sickness, is:
>
> 1.  continuously unable to perform the substantial and material duties of his regular occupation;
>
> 2.  under the regular care of a licensed physician other than himself; and
>
> 3.  not gainfully employed in any occupation for which he is or becomes qualified by education training or experience.
>
> Thereafter, "Total Disability" means that, because of Injury or Sickness the Insured is:
>
> 1.  continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and
>
> 2.  under the regular care of a licensed physician other than himself.

(A true and correct copy of the entire policy of insurance is attached hereto as Exhibit "A" and by that reference incorporated herein.)

7. In consideration of premiums paid, said policy has remained in full force and effect from the date of its inception.

8. Dunn was employed as a floor broker until December 4, 1996. On that date he was unable to continue working after being bumped and aggravating a back injury.

9. Dunn applied for and received disability benefits beginning January 5, 1997. These benefits continued without interruption until October 30, 2006.

10. While receiving benefits from the Hartford, Dunn's disability was supported by his treating physicians on a continuous basis. On October 30, 2006, Hartford terminated Dunn's benefits despite a lack of change in Dunn's condition.

11. Despite support for Dunn's claim with records and reports from treating and examining physicians and a report by a certified rehabilitation counselor/vocational expert finding Dunn's impairments would keep him from performing his duties as a floor broker, the Hartford has refused and continues to refuse to make benefit payments despite a demand by plaintiff that it do so.

12. As a result of the foregoing, there is due and owing to the plaintiff by reason of defendant's breach of the foregoing contract of insurance, payments due since approximately July of 2004, as well as well as interest payable thereon at a rate of 4% per annum pursuant to 215 ILCS 5/357.9. In addition thereto, plaintiff is entitled to a declaratory judgment declaring him ongoing entitlement to monthly benefits so long as he continues to meet the terms and conditions of the insurance policy.

WHEREFORE, plaintiff prays for judgment against defendant in an amount equal to the accrued amount of benefits through judgment, a declaration that benefits are to continue so long as plaintiff continues to meet the policy requirements for payment of disability benefits,

prejudgment interest upon all accrued benefits, and all other relief to which plaintiff is entitled, including his costs of suit.

### Count II

For Count II of his complaint, plaintiff states:

1-12. Plaintiff re-alleges paragraphs 1-12 of Count I as paragraphs 1-12 of Count II of this Complaint, and by that reference, incorporates those allegations herein.

13. There is and was in effect in the State of Illinois at all times relevant hereto, a statute codified at 215 ILCS 5/155 which allows the court to assess penalties and attorneys' fees against an insurance company that acts vexatiously and unreasonably.

14. Hartford's refusal to grant Dunn his benefit payments in the face of the medical and vocational evidence establishing his disability, constitutes an unreasonable and vexatious delay or refusal of payment on a claim since defendant has refused to make disability payments despite the submission of valid and well-supported proofs of claim; and there is no legitimate dispute as to plaintiff's entitlement to benefits.

WHEREFORE, plaintiff prays for the following relief:

A.     That plaintiff be awarded judgment in his favor and against the defendant as provided for in Count I of this Complaint.

B.     That defendant be assessed the maximum penalty allowable pursuant to 215 ILCS 5/155, and that defendant be ordered to pay plaintiff's attorney's fees and court costs.

Respectfully submitted,

David A. Bryant
Attorney for Plaintiff

Daley, DeBofsky & Bryant
55 W Monroe St Ste 2440
Chicago, Illinois 60603
(312) 372-5200/FAX (312) 372-2778

# Continental Casualty Company

**6**

**78**

CNA Plaza
Chicago, Illinois 60685

A Stock Company

## CERTIFICATE OF INSURANCE

### Having Issued Group Policy No. 01-A-1919 to

### B'NAI B'RITH

(Herein called the Holder)

Continental Casualty Company hereby certifies that You, the Insured, are covered under the Policy. No coverage is effective, however, if the applicable first premium has not been paid on or before the date it is due.

This Certificate is not the contract of insurance. It is evidence of Your coverage under the Policy. It takes effect at 12:01 a.m., Standard Time on the Effective Date stated in the Schedule. If, because of Injury or Sickness, You are not Actively-at-Work at Your occupation on the date Your insurance would otherwise take effect, insurance will take effect on the day after You return to full-time work for a continuous period of (1) day.

Coverage is subject to all definitions, limitations and conditions of the Policy. The Policy is in the Holder's possession and may be inspected by You at any time during normal business hours at the Holder's office.

This certificate replaces and supersedes any and all certificates under the Policy which bear a prior effective date.

### PART 1

**30-DAY RIGHT TO EXAMINE YOUR CERTIFICATE**

It is important that You understand the coverage described in this certificate and are satisfied with it. It should be read carefully. If there are any questions, You should contact Us. If You are not satisfied with the coverage, this certificate should be returned to Us within 30 days after receipt. We will then refund the premium paid, and the certificate will be considered to have never been issued.

SIGNED FOR THE CONTINENTAL CASUALTY COMPANY

*D. H. Chookasian*

Chairman of the Board

**TABLE OF CONTENTS**

PAGE

30-DAY RIGHT TO EXAMINE YOUR CERTIFICATE............................................................................1

DEFINITIONS............................................................................................................................3

GENERAL BENEFIT INFORMATION..............................................................................................4

TOTAL DISABILITY BENEFIT........................................................................................................5

RESIDUAL DISABILITY BENEFIT..................................................................................................5

WAIVER OF PREMIUM................................................................................................................5

RECURRENT DISABILITY............................................................................................................5

SURVIVOR INCOME BENEFIT......................................................................................................5

EXCLUSIONS............................................................................................................................5

INDIVIDUAL TERMINATIONS.......................................................................................................6

CLAIMS....................................................................................................................................6

PREMIUMS...............................................................................................................................7

THE CONTRACT........................................................................................................................7

## Part 2

### DEFINITIONS

The following are key words and phrases used in this certificate. When these words and phrases, or forms of them, are used, they are capitalized. As this certificate is read, refer back to these definitions.

**"Actively-at-Work"** is defined in the Schedule of Benefits.

**"Application"** means the Holder's application attached to the Policy.

**"Complications of Pregnancy"** means:
1. A condition requiring hospital confinement, whose diagnosis is distinct from pregnancy but adversely affected or caused by pregnancy, such as:
    a. Acute nephritis or nephrosis;
    b. Cardiac decompensation;
    c. Missed abortion; or
    d. Similar medical and surgical conditions of comparable severity.
2. A non-elective caesarean section;
3. Termination of ectopic pregnancy;
4. Spontaneous termination of pregnancy occurring during a period of gestation in which a viable birth is not possible. However, the term Complication of Pregnancy will not include:
    a. False labor, occasional spotting or morning sickness;
    b. Physician prescribed rest;
    c. Hyperemesis gravidarum;
    d. Pre-eclampsia;
    or any similar condition associated with the management of a difficult pregnancy not consisting of a nosologically distinct Complication of Pregnancy.

**"Disability"** means Total Disability or Residual Disability.

**"Earnings"** is defined in the Schedule of Benefits.

**"Elimination Period"** means the number of days, at the beginning of each period of continuous Disability, stated in the Schedule of Benefits, that the Insured must be Disabled before Disability Benefits become payable.

**"Injury"** means bodily injury caused by an accident which results in a loss, directly and independently of all other causes. The injury must occur and disability must begin while the Insured's coverage is in force.

**"Insured"** or **"You"** means the member of the Holder who is named as the Insured in the Schedule of Benefits and whose insurance is in force under the terms of the Policy.

**"Insured Occupation Period"** means that period shown in the Schedule of Benefits.

**"Loss of Earnings Ratio"** is equal to:

$\frac{A - B}{A}$ where A = Pre-Disability Earnings.

B = Monthly Earnings during Residual Disability.

**"Monthly Benefit"** and **"Maximum Period Payable"** mean that benefit and that period shown in the Schedule of Benefits which apply to the Insured.

**"Pre-Disability Earnings"** is defined in the Schedule of Benefits.

**"Pre-existing Condition"** means a condition for which symptoms existed which would cause an ordinarily prudent person to seek diagnosis, care or treatment within a 12 month period prior to the Insured's effective date of insurance; or a condition for which medical advice or treatment was rendered, prescribed or recommended within a <u>12</u> month period prior to the Insured's effective date of insurance.

A condition will no longer be pre-existing if:

1. No medical advice or treatment was rendered, prescribed or recommended for 12 consecutive months after the Insured's effective date of insurance; or
2. The Insured's Insurance has been in effect for 24 months.

If an Insured was insured under the Previous Policy, the period the Insured has been insured under the Policy will be from the Effective Date under the Previous Policy but only for the amount of the previous coverage.

**"Previous Policy,"** if any, means the policy stated in the Schedule of Benefits from which the Insured transferred at the time of termination of insurance thereunder.

**"Residual Disability"** means that because of Injury or Sickness the Insured while unable to perform all of the material duties of his regular occupation on a full-time basis, is:

1. Gainfully employed in any occupation on a full-time or part-time basis;
2. Under the regular care of a physician, other than himself; and
3. Disabled to the extent that the Loss of Earnings Ratio is 20% or more due to the same Injury or Sickness.

**"Schedule of Benefits"** means the schedule of benefits attached to and made a part of this Certificate.

**"Sickness"** means the sickness or disease causing loss which begins while the Insured's coverage is in force.

**"Total Disability"** means that, during the Elimination Period and the Insured Occupation Period, the Insured, because of Injury or Sickness, is:

1. Continuously unable to perform the substantial and material duties of his regular occupation;
2. Under the regular care of a licensed physician other than himself; and
3. Not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

Thereafter, "Total Disability" means that, because of Injury or Sickness, the Insured is:

1. Continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and
2. Under the regular care of a licensed physician other than himself.

**"We", "Our"** or **"Us"** means the Continental Casualty Company, Chicago, Illinois.

# PART 3

## DISABILITY BENEFITS

### GENERAL BENEFIT INFORMATION

1. The Elimination Period, the Monthly Benefit, and the Maximum Period Payable are shown in the Schedule of Benefits.

2. Disability benefits are not payable during the Elimination Period nor beyond the Maximum Period Payable.

3. Total benefits payable for Total Disability and Residual Disability shall not exceed the Maximum Period Payable.

4. We will only pay Disability that begins while the Insured's coverage is in force. Termination of such coverage will not affect a claim for Disability that begins before termination.

5. If a benefit is payable for a period less than 1 month, We will pay 1/30th of the Monthly Benefit for each day of Disability.

## TOTAL DISABILITY BENEFIT

We will pay the Monthly Benefit for each month of Total Disability which continues after the Elimination Period.

## RESIDUAL DISABILITY BENEFIT

We will pay a Residual Disability Benefit for each month of Residual Disability which follows:
(1) The Elimination Period; or
(2) A period for which Total Disability Benefits were payable.

The Residual Disability Benefit will not be payable during the Elimination Period. The amount payable will be equal to the Monthly Benefit times the Loss of Earnings Ratio. If the Loss of Earnings Ratio is 80% or more, it will be considered 100%.

Residual Disability Benefits will cease on the earliest of the following to occur:
(1) The date the Loss of Earnings is less than 20%; or
(2) The end of the Maximum Period Payable.

## WAIVER OF PREMIUM

If the Insured becomes Totally Disabled before age 60 and benefits become payable under the Policy for 6 successive months, We will waive any subsequent premium that becomes due for as long as benefits are payable for the Total Disability. During this period, the Insured's coverage will remain in force.

When the Insured is no longer eligible for Waiver of Premium his coverage can be continued in force by payment of the premiums that becomes due subject to the Policy provisions.

## RECURRENT DISABILITY

If Disability for which benefits were payable ends but recurs due to the same or related causes less than 6 months after the end of a prior Disability, it will be considered a resumption of the prior Disability. Such recurrent Disability shall be subject to the terms of the Policy that were in effect at the time the prior Disability began.

Disability due to the same or related causes, which recurs 6 months or more after the end of a prior Disability shall be subject to: (1) A new Elimination Period; (2) A new Maximum Benefit Period; (3) The other terms of the Policy that are in effect on the date the Disability recurs.

Disability must recur while the Insured's coverage is in force under the Policy.

## SURVIVOR INCOME BENEFIT

If an Insured dies after having received the Total Disability Benefit provided by the Policy for at least 90 consecutive days and during a period for which benefits are payable, We will pay the designated beneficiary, if living, a Survivor Income Benefit. This benefit is equal to 50% of the monthly amount the Insured was last entitled to receive for the month prior to his death.

The Survivor Income Benefit shall be payable on a monthly basis immediately after We receive written proof of the Insured's death. The benefit will end on the earliest to occur:
1. 2 monthly payments have been made to the beneficiary;
2. The end of the Maximum Period Payable;
3. The death of the designated beneficiary.

## EXCLUSIONS

The Policy does not cover any loss caused by or resulting from:

1. Declared or undeclared war or an act of either;
2. An intentionally self-inflicted Injury, while sane or insane;
3. Disability beyond 24 months after the Elimination Period if it is due to mental or emotional disorders, alcoholism or drug addiction;
4. Pregnancy or childbirth, except Complications of Pregnancy;
5. Participation in an illegal occupation or attempt to commit a felony;
6. A Pre-existing Condition;
7. Any condition which is the subject of a waiver or impairment rider attached to Your certificate.

The Policy does not cover any loss commencing while an Insured is in the service of the armed forces of any country. Orders to active military service for training purposes of 2 months or less shall not, for the purposes of this exclusion, constitute service in the armed forces of any country. Upon notification to Us of entering the armed forces of any country, We will return to the Insured pro-rata any premium paid for any period during which the Insured is in such service.

Benefits shall be payable under the Policy either for Injury or Sickness, but not for both, during any concurrent period of Disability.

The Policy does not cover any loss incurred by the Insured resulting from Injury or Sickness for which benefits are payable under the Previous Policy.

## PART 4

### INDIVIDUAL TERMINATIONS

Your coverage will terminate on the earliest of the following dates:

1. The date the Policy is terminated;
2. The date at the end of the period for which premium has been paid, if the required premium is not paid;
3. The date You reach the termination age shown in the Schedule of Benefits; or
4. On the date that You:
    a. Are retired or cease to be actively engaged in full-time employment;
    b. Are no longer associated with the Holder in a capacity making You eligible for insurance.

However, Our acceptance of premiums beyond the date of continued eligibility for coverage will not continue coverage beyond the dates specified in a. & b. above. Any unearned premium will be refunded.

## PART 5

### CLAIMS

**Notice of Claim:** Written notice must be given to Us within 30 days after any loss covered by the Policy. If notice cannot be given within that time, it must be given as soon as reasonably possible.

The notice will be sufficient if it identifies the Insured and the Policy. It must be sent to Us at Our Home Office, CNA Plaza, Chicago, Illinois 60685 or given to Our agent.

**Claim Forms:** After We receive the written notice of claim, We will furnish claim forms within 15 days. If We do not, the claimant will be considered to have met the requirements for written proof of loss if We are given written proof of the extent and nature of the loss.

**Written Proof of Loss:** Written proof of loss must be given to Us within 90 days after the date of such loss. If it is not reasonably possible, the claim is not affected if the proof is given as soon as possible. Unless the Insured is legally incapacitated, written proof must be given within one year of the time it is otherwise due.

**Time of Payment of Claim:** Benefits payable under the Policy for any loss which requires periodic payment will be paid monthly subject to receipt of due written proof of loss. Any balance remaining unpaid upon termination of liability will be paid upon receipt of due written proof.

**Payment of Claim:** All benefits are paid to the Insured or the Insured's estate, unless the Insured has assigned them elsewhere.

If benefits are payable to the estate, We may pay up to $1,000.00 to any relative of the Insured whom We feel is entitled to the benefits. Any payment made in good faith will discharge Us to the extent of the payment.

**Misstatement of Age:** If the age of an Insured has been misstated, the benefit payable under the Policy will be in an amount that the premiums paid would have purchased at the Insured's true age. If coverage would not have been issued, We will refund the premium paid.

**Physical Examination:** At Our expense, We have the right to have a physician examine the Insured as often as reasonable necessary while the claim is pending.

**PART 6**

## PREMIUMS

**Payment of Premium:** Premium for the Policy is computed as stated in Statement 10. of the Application. Premiums are payable in United States currency, to Us when due, subject to the Grace Period.

We have the right to change premium rates. Change may be made on any premium due date. Before any change is effective We will give thirty-one (31) days written notice of the change to the Holder and the Insured.

**Grace Period:** A grace period of 31 days is allowed for the payment of each premium due after the first premium. The Insured's coverage will remain in force during the grace period. However, if at least 31 days before the premium due date We have sent written notice to the Holder's last address shown in Our records of Our intent to non-renew the Policy, or if the Holder gives Us written notice to non-renew the Policy, the grace period will not apply to any period after the date the non-renewal is to be effective.

**Refund of Unearned Premium at Death:** If an Insured dies, We will make a pro-rata refund of premium paid for a period beyond the date of death.

## PART 7

## THE CONTRACT

**Entire Contract; Changes:** The Policy, the Application, the individual applications of the Insureds and any attached papers constitute the entire contract between the parties.

Any statement made by the Holder or by any Insured shall, in the absence of fraud, be deemed a representation and not a warranty. No such statement shall void the insurance, reduce the benefits or be used in defense to a claim under the Policy unless it is in writing, a copy of which has been furnished to the Holder or the Insured, whoever made the statement. No such statement of the Holder shall be used to void the Policy after it has been in force for two years. Nor shall a statement of the Insured, in the absence of fraud, be used in defense to a claim for disability commencing after such person's coverage has been in force for two years.

No change in the Policy is valid unless approved in writing on the Policy by one of Our officers. No agent has the right to change the Policy or to waive any of its provisions.

**Legal Actions:** No action at law or in equity can be brought until after 60 days following the date written proof of loss was given. No action can be brought after three years from the date written proof is required.

**Conformity with State Statutes:** If any provision of the Policy conflicts with the statutes of the state in which the Policy was delivered or issued, it is automatically changed to meet the minimum requirements of the statute.

**Policy Inspection:** The Policy shall be available for inspection at the Holder's office at any time during regular business hours.

**Worker's Compensation:** The Policy is not in lieu of and does not affect any requirements for coverage by Workers' Compensation Insurance.

# Continental Casualty Company

**6**
**78**

CNA Plaza
Chicago, Illinois 60685          A Stock Company

## LONG TERM DISABILITY INSURANCE
## SCHEDULE OF BENEFITS

**INSURED:**

**ADMINISTRATOR/AGENT**
Selman & Company
24400 Chagrin Boulevard
Cleveland, Ohio 44122-5639
1-800-723-2624

**POLICYHOLDER:** B'NAI B'RITH INTERNATIONALS
**POLICY NO.:** 01-A-1919
**POLICY ANNIVERSARY DATE:** January 1

**DATE OF BIRTH:**

**CERTIFICATE EFFECTIVE DATE:** January 1,1996
**CERTIFICATE NUMBER:**
**SCHEDULE DATE:** January 1, 1996

### BENEFITS

**MONTHLY BENEFIT:**

**TERMINATION AGE:** 70 years of age:

**INSURED OCCUPATION PERIOD:** 24 Months

**MAXIMUM PERIOD PAYABLE:**          Under age 64 - to age 65    ———
                                     Age 64 and over - one year

**ELIMINATION PERIOD:** 30, 60, 90 or 120 days

### DEFINITIONS

**"Actively-at-Work"** means an Member is performing the substantial and material duties of his regular occupation on a full-time basis (at least 30 hours per week) at his customary place of employment or business.

**"Earnings"** means the monthly wage or salary the member earns for services performed by him during Residual employment.

**"Net Income"** means income excluding investment returns, rents, royalties and similar income not directly produced by a Member's profession.

**"Pre-Disability Earnings"** means the average net monthly income from the personal practice of the member's profession. the average is based on net income during the 24 months before disability began.

SI1-117463-A01                      1                      (SI1BNAI,01A)

**IMPORTANT: THIS IS A PART OF YOUR CERTIFICATE. IT IS EVIDENCE OF YOUR COVERAGE AND SHOULD BE ATTACHED TO YOUR CERTIFICATE. THIS SCHEDULE REPLACES AND CANCELS ALL OTHER SCHEDULES, IF ANY, ISSUED TO THE INSURED NAMED HEREON UNDER THE CERTIFICATE.**

DIG-1

# Continental Casualty Company

**6**
**78**

CNA Plaza                    A Stock Company
Chicago, Illinois 60685

## EXTRATERRITORIAL RIDER

This rider is attached to and made a part of the Certificate issued to residents of North Carolina under Group Policy 01-A-1919 issued by Continental Casualty Company, and is effective concurrently with the Certificate to which it is attached.

North Carolina requires certain benefits and provisions for its residents.

This Policy is amended, solely with respect to residents of North Carolina, so that any rights or benefits with respect to:

1. UNIFORM PROVISIONS (Entire Contract)—T1-103303-A-32

2. UNIFORM PROVISIONS (PREMIUMS)—T1-113637-A-32

will not be less than as described on the following pages. These are minimums. All provisions, definitions, limitations and conditions of the Policy which are not inconsistent with these rights and benefits apply to them. If the Policy, without this rider, would provide benefits greater than these minimums, then benefits will be paid and rights granted under the terms of the Policy and not as described herein. If the Policy, without this rider, would provide a benefit or right less than these minimums, then benefits will be paid and rights granted as described herein and not as determined by the Policy without the rider.

*D. H. Chookasian*

Chairman of the Board

X1-103288-A

The Laws of North Carolina require

certain changes relative to

the Language contained in the

"Entire Contract" provision.

The provision, as it applies to residents of

North Carolina only, reads as follows:

Entire Contract

This policy, the application of the Holder, the applications of the Insureds, if any, and any attached papers form the entire contract between the parties. Any statement made by the Holder or any Insured shall be considered a representation and not a warranty. No such statement shall be used in defense to a claim unless:

1. It is contained in written application; and

2. A copy of such application has been furnished to the Holder or Insured, whomever made the statement.

No such statement of the Holder shall be used to void the policy after it has been in force for two years from its effective date. After the insurance of an Insured has been in force for two years under the policy, no such statement of the Insured shall be used to void the Insureds' insurance or to deny or reduce a claim for loss incurred after such two year period.

No one has the right to change any part of the policy or to waive any of its provisions unless the change is approved in writing on the policy by one of Our executive officers.

The Laws of North Carolina require
certain changes relative to
the Language contained in the
"PREMIUMS" provision.
The provision, as it applies to residents of
North Carolina only, reads as follows:

**Premiums**

The premium for the Policy is computed as shown in the Master Application. Premiums are payable to Us when due, subject to the Grace Period.

We have the right to change premium rates. Change may be made on any premium due date after the first year, however, not more than once in every six months. Before any change is effective, however, We will mail written notice of the change to the Holder at least 45 days prior to the date of change.

We also have the right to inspect the Holder's books and records as they relate to the insurance under this policy. This right may be exercised at reasonable times.

Clerical error in keeping the records will not;

1. Void insurance otherwise validly in force; nor
2. Continue insurance otherwise validly terminated.

Upon discovery of a clerical error an equitable adjustment of premiums will be made.

T1-113637-A-32

(NCBNAI32)

# FLORIDA OUT-OF STATE GROUP HEALTH CHECKLIST

Please check the specific group under Florida Statute 627.6515(2)(a) the policy will be issued to:

| | |
|---|---|
| ☐ Employer/Employee | ☒ Association group formed primarily for purposes other than insurance |
| ☐ Labor Union/Association | ☐ Group formed primarily to provide insurance |
| ☐ Additional Group | ☐ Insurance Agents |
| ☐ Blanket | |
| ☐ Franchise | |

| Statute and/or Rule | | Y/N | N/A | Form/Page# |
|---|---|---|---|---|
| 627.413(4) 627.602(1)(f) | Form must have a number in lower left-hand corner. | Y | | PI1-117463-A/1 QI1-117463-A/1 |
| 627.416 | Form must be executed by an officer of the company. | Y | | PI1-117463-A/1 QI1-117463-A/1 |
| 627.429 | AIDS. The contract shall not specifically limit or exclude AIDS. Tests must be conducted according to statute. | | X | PI1-117463-A/5 QI1-117463-A//5 |
| 627.6515(2)(b) | Disclosure statement. "The benefits of the policy providing your coverage are governed primarily by the law of a state other than Florida". This must be in a contrasting color and in at lease 10-Point type. | | | QI1-117463-A/1 |
| 627.6515(2)(c) | Provide the following coverages: (1)627.419 - Construction of policies must include the services of physicians, medical doctors, dentists, optometrists, podiatrists and chiropractors. | | X | |

DI4-524
Rev.4/91

Out-of-State Group Health Checklist

| Statute and/or Rule | | Y/N | N/A | Form/Page# |
|---|---|---|---|---|
| (2) 627.6574 | If policy provides | | X | |
| | for maternity care it must also provide coverage for certified nurse-midwives, licensed midwives and the services of licensed birth centers. | | | |
| (3) 627.6565 | Coverage for Newborns | | | |
| (4) 627.6579 | Child Health Assurance Act | | | |
| (5) 627.667 | Extension of Benefits | | | |
| (6) 627.6675 | Conversion on termination of eligibility. | | | |
| 627.6515(3) | Section 624.428 does not apply when a policy is issued under subsection 2 of this statute. | | X | |
| 627.6515(4) | Copy of master policy and certificate shall be filed with the Department for information purposes prior to solicitation in Florida. | Y | | PI1-117463-A QI1-117463-A |
| 627.6515(5) | Certification by an officer of the company that the policy and certificate have been filed and approved in the state where the master policy is issued. | Y | | |
| 627.6515(6) | Florida Licensed Resident Agent must be designated except as to one of the groups listed in this subsection. | Y | | QI1-117463-A/1 |
| 627.6515(2)(a) | Rates must be filed for groups formed primarily for insurance purposes. | | X | |

DI4-524

Rev.4/91

Out-of-State Group Health Checklist.

Additional Requirements:

1. If the group is an association as defined in F.S. 627.654, then attach information to substantiate same, such as:

    (a) The date and state where the constitution and by-laws were filed, or

    (b) A copy of the constitution and by-laws.

2. Any form filed under subsection (1) of F.S. 627.6515 shall fully comply with all the statutes, rules, and other requirements applicable to an in-state contract.

3. If the forms are filed as a Multiple Employers Trust then we will need the information to substantiate it is a true MET.

4. If the policy is issued to a group formed primarily for insurance purposes, attach the rates and actuarial information which substantiate the benefits are reasonable in relation to the premiums charged.

5. An association group which common group is formed primarily for purposes other than providing insurance, may insure only the members and their dependents.  The group may not insure the employee of an employer, etc.

DI4-524

Rev.4/91

# Continental Casualty Company

**6**
**78**

CNA Plaza
Chicago, Illinois 60685        A Stock Company

## EXTRATERRITORIAL RIDER

This rider is attached to and made a part of Group Policy 01-A-1919 issued by Continental Casualty Company, and is effective January 1, 1996.

North Carolina requires certain benefits and provisions for its residents.

This Policy is amended, solely with respect to residents of North Carolina, so that any rights or Benefits with respect to:

1. UNIFORM PROVISIONS (Entire Contract)—T1-103303-A-32

2. UNIFORM PROVISIONS (PREMIUMS)—T1-113637-A-32

will not be less than as described on the following pages. These are minimums. All provisions, definitions, limitations and conditions of the Policy which are not inconsistent with these rights and benefits apply to them. If the Policy, without this rider, would provide benefits greater than these minimums, then benefits will be paid and rights granted under the terms of the Policy and not as described herein. If the Policy, without this rider, would provide a benefit or right less than these minimums, then benefits will be paid and rights granted as described herein and not as determined by the Policy without this rider.

*D. H. Chookasian*
**Chairman of the Board**

*D. W. Lowry*
Secretary

R1-103287-A

The Laws of North Carolina require

certain changes relative to

the Language contained in the

"Entire Contract" provision.

The provision, as it applies to residents of

North Carolina only, reads as follows:

**Entire Contract**

This policy, the application of the Holder, the applications of the Insureds, if any, and any attached papers form the entire contract between the parties. Any statement made by the Holder or any Insured shall be considered a representation and not a warranty. No such statement shall be used in defense to a claim unless:

1. It is contained in a written application; and

2. A copy of such application has been furnished to the Holder or Insured, whomever made the statement.

No such statement of the Holder shall be used to void the policy after it has been in force for two years from its effective date. After the insurance of an Insured has been in force for two years under the policy, no such statement of the Insured shall be used to void the Insureds' insurance or to deny or reduce a claim for loss incurred after such two year period.

No one has the right to change any part of the policy or to waive any of its provisions unless the change is approved in writing on the policy by one of Our executive officers.

T1-103303-A-32

(R1BNAI32)

The Laws of North Carolina require

certain changes relative to

the Language contained in the

"PREMIUMS" provision.

The provision, as it applies to residents of

North Carolina only, reads as follows:

**Premiums**

The premium for the Policy is computer as shown in the Master Application. Premiums are payable to Us when due, subject to the Grace Period.

We have the right to change premium rates. Change may be made on any premium due date after the first year, however, not more than once in every six months. Before any change is effective, however, We will mail written notice of the change to the Holder at least 45 days prior to the date of change.

We also have the right to inspect the Holder's books and records as they relate to the insurance under this policy. This right may be exercised at reasonable times.

Clerical error in keeping the records will not;

    1. Void insurance otherwise validly in force; nor

    2. Continue insurance otherwise validly terminated.

Upon discovery of a clerical error an equitable adjustment of premiums will be made.

T1-113637-A-32

(NCBNAI32)

# Continental Casualty Company

**6**
**78**

CNA Plaza
Chicago, Illinois 60685

A Stock Company

## CERTIFICATE RIDER

### (TO BE ATTACHED TO GROUP CERTIFICATE)

**Holder:** **International Benefit Services Group Trust**

**Policy No.:** **06-A-1791**

It is hereby understood and agreed that the Certificate of Insurance to which this rider is attached is amended as follows:

The part in the Schedule of Benefits which reads:

Termination Age: **None**

is amended to read:

Termination Age: **70**

This rider is made a part of the Certificate of Insurance to which it is attached. It takes effect on March 1, 1998 as to Injury occurring thereafter and/or Sickness or disease causing loss commencing thereafter. It expires concurrently with the Certificate to which it is attached and is subject to all the definitions, limitations and conditions of the Policy not inconsistent herewith.

SIGNED FOR THE CONTINENTAL CASUALTY COMPANY

*Dennis Chookaszian*
Chairman of the Board

R1-110662-A

# Continental Casualty Company

**6**

**78**

CNA Plaza                    A Stock Company
Chicago, Illinois 60685

## MASTER APPLICATION

Application is hereby made to the CONTINENTAL CASUALTY COMPANY for a group disability income insurance policy (the "Policy) based on the following statements and representations:

1. Name of Applicant:    B'NAI B'RITH INTERNATIONAL, INC.

   Address:    1640 Rhode Island Ave. N.W.    Washington    D.C.    20036
                                              City           State       Zip Code

2. Name of Organization:    Same as above

   Headquarters Address:
                                              City           State       Zip Code

3. Under the laws of what state is the Organization chartered or organized?    Washington D.C.

4. Nature of employment of members:    Varies - Jewish Professional Assoc.

5. Eligibility:
   All active members of B'nai B'rith under age 60 who are actively engaged full-time (a minimum of 30 hours per week) in the duties of their occupation.

   The termination age for insureds under the policy providing the coverage described here is 70 years of age.

6. The Previous Policy(ies) if any, means Policy No(s). AGL-1007 and AGL 991 Issued by Life Insurance Company of North America; AGC-403 and AGC-407 issued by Insurance Company of North America

   Form No.: N/A                    Terminated on:    December 31, 1995

7. UNDERWRITING PROVISIONS:
   Members described in Item 5. of this Application may apply for Insurance under the Policy

   All Members who were insured under the Previous Policy when it was terminated may apply and they will be insured under the policy without additional Evidence of Insurability, but any waivers of liability under the Previous Policy will also apply under Our Policy. Such Members will be insured for the same or similar amounts of indemnity under the same or similar plan of insurance.

   Any increase in Indemnity or a shorter Elimination Period will be subject to Our approval of satisfactory Evidence of Insurability

   All Other Members will be insured under the Policy provided they furnish Us with satisfactory Evidence of Insurability which is acceptable to Us and without expense to Us. Such insurance will take effect on the date of Our approval of the application for such Member who is Actively - at - Work on a full time basis.

   No insurance will become effective for any person unless the appropriate premium is paid.

8. INSURED OCCUPATION PERIOD:    24 Months

9. Schedule of Benefits:    (See attached Schedule of Benefits)

Z1-16240-A                    1                    (ZI1BNAI.01A)

10. The Premiums for insurance under the Policy are applicable at the insured's age when such insurance becomes effective and at the insured's attained age on the annual renewal premium due dates and are payable in advance and shall be calculated according to the following:

## SCHEDULE OF ANNUAL PREMIUMS (see attached)

This Application is attached to and made a part of Group Policy Number 01-A-1919 and is effective January 1, 1996. It cancels and replaces all other applications, if any, attached to said Group Policy and the premiums stated in this Application replace any premiums stated in the Group Policy and in any Application attached to said Group Policy.

Date _____     _____
                                         Applicant


Agent: _____     By: _____
                                       Signature of Officer


                              _____
                                       Official Position

9.                              **Schedule of Benefits**


B'NAI B'RITH
Applicant
_____

Under Master Application Z1-16240-A, Dated: Mo. January 1, 1996

**MONTHLY BENEFIT:** An amount from $400.00 to $2,500.00 per month but not to exceed 66 2/3% of a Member's Earned Income

**TERMINATION AGE:** 70 years of age.

**INSURED OCCUPATION PERIOD:** 24 Months

**MAXIMUM PERIOD PAYABLE:**       Under age 64 - to age 65
                                   Age 64 and over - one year

**ELIMINATION PERIOD:** 30, 90 or 180 days

### DEFINITIONS

**"Actively-at-Work"** means a Member is performing the substantial and material duties of his regular occupation on a full-time basis (at least 30 hours per week) at his customary place of employment or business.

**"Earned Income"** means: For a Member not self-employed - the monthly wage or salary received from his employer on the date of application. It excludes commissions, overtime earnings, incentive pay, bonuses or other compensation. For a self-employed Member - the average Net Monthly income from the personal practice of his profession. The average is based on Net income during the 24 months before date of application. For a Member self-employed less than 24 months, it is based on the entire time he was self-employed.

**"Earnings"** means the monthly wage or salary the Member earns for services performed by him during Residual employment.

**"Net Income"** means income excluding investment returns, rents, royalties and similar income not directly produced by a Member's profession.

**"Pre-Disability Earnings"** means the average net monthly income from the personal practice of the Member's profession; the average is based on net income during the 24 months before disability began.

10.           **SCHEDULE OF ANNUAL PREMIUMS PER $100.00 IN MONTHLY BENEFITS**

| Member's Attained Age | 30-Day Waiting Period | 90-Day Waiting Period | 180-Day Waiting Period |
|---|---|---|---|
| Under 34 | $ 18.18 | $13.77 | $11.48 |
| 35-39 | 22.73 | 17.22 | 14.92 |
| 40-44 | 33.33 | 25.25 | 21.81 |
| 45-49 | 54.54 | 41.32 | 36.73 |
| 50-54 | 81.83 | 61.99 | 55.10 |
| 55-59 | 118.19 | 89.54 | 74.61 |
| 60-69* | 118.19 | 89.54 | 74.61 |

*Rates for ages 60 through 69 are for renewal purposes only. Coverage terminates at age 70



Date: April 26, 1996

RE: CONTINENTAL CASUALTY COMPANY

# CERTIFICATION

I have reviewed or supervised the review of the policy form(s) which this filing describes. I hereby certify that the statements made in this filing are in compliance with applicable Florida Statutes and Rules. I further certify it will be revised and/or discontinued if the Department determines that the form(s) does not comply with Florida requirements.

| | |
|---|---|
| PI1-117463-A | POLICY |
| QI1-117463-A | CERTIFICATE |
| SI1-117463-A | SCHEDULE |

*Charles L. Conrow*

Charles L. Conrow
Assistant Vice President

DI4-546
Rev 4/91

# Continental Casualty Company



CNA Plaza                 A Stock Company
Chicago, Illinois 60685

**Holder: B'NAI B'RITH**

**Policy Number: 01-A-1919**

**Policy Effective Date: January 1, 1996**

**Policy Anniversary Date: January 1**

The Policy is issued in consideration of the statements made in the Application and the payment of premium. We agree with the Holder to insure eligible persons of the Holder based on Our underwriting standards. We promise to pay benefits for loss resulting from Disability subject to the Policy provisions. The Policy shall take effect on the Policy Effective Date stated above.

## PART 1

### EFFECTIVE DATE AND TERM

The Policy starts on the Policy Effective Date. The Insured's coverage stays in force for the period for which premium has been paid.

We and the Holder have the right to terminate the Policy on any premium due date by giving written notice of such termination at least 31 days in advance.

All insurance periods begin and end at 12:00 A.M., Standard Time, at the Holder's address stated in the Application.

### PREMIUMS SUBJECT TO CHANGE

We have the right to change premium rates. Change may be made on any premium due date. Before any change is effective We will give 31 days written notice of the change to the Holder and the Insured.

## PART 2

### 30-DAY RIGHT TO EXAMINE THE CERTIFICATE

It is important that the Insured understands the coverage described in the certificate and is satisfied with it. It should be read carefully. If there are any questions, the Insured should contact Us. If the Insured is not satisfied with the coverage, the certificate should be returned to Us within 30 days after receipt. We will then refund the premium paid, and the

Chairman of the Board                    Secretary

# TABLE OF CONTENTS

**PAGE**

EFFECTIVE DATE AND TERM ............................................................................................................... 1

30-DAY RIGHT TO EXAMINE THE CERTIFICATE .......................................................................... 1

DEFINITIONS ...................................................................................................................................... 3

ELIGIBILITY AND EFFECTIVE DATE OF INDIVIDUAL INSURANCE ............................................ 4

GENERAL BENEFIT INFORMATION ............................................................................................... 4

TOTAL DISABILITY BENEFIT ........................................................................................................... 4

RESIDUAL DISABILITY BENEFIT ..................................................................................................... 4

WAIVER OF PREMIUM ...................................................................................................................... 5

RECURRENT DISABILITY .................................................................................................................. 5

SURVIVOR INCOME BENEFIT .......................................................................................................... 5

EXCLUSIONS ...................................................................................................................................... 5

INDIVIDUAL TERMINATIONS ........................................................................................................... 6

CERTIFICATES ................................................................................................................................... 6

CLAIMS ............................................................................................................................................... 6

PREMIUMS ......................................................................................................................................... 6

THE CONTRACT ................................................................................................................................ 7

**PART 3**

## DEFINITIONS

The following are key words and phrases used in this Policy. When these words and phrases, or forms of them, are used, they are capitalized. As this Policy is read, refer back to these definitions.

**"Actively-at-Work"** is defined in the Schedule of Benefits.

**"Application"** means the Holder's application attached to the Policy.

**"Complications of Pregnancy"** means:
1. A condition requiring hospital confinement, whose diagnosis is distinct from pregnancy but adversely affected or caused by pregnancy, such as:
    a. Acute nephritis or nephrosis;
    b. Cardiac decompensation;
    c. Missed abortion; or
    d. Similar medical and surgical conditions of comparable severity.
2. A non-elective caesarean section;
3. Termination of ectopic pregnancy;
4. Spontaneous termination of pregnancy occurring during a period of gestation in which a viable birth is not possible.

   However, the term Complication of Pregnancy will not include:
    a. False labor, occasional spotting or morning sickness;
    b. Physician prescribed rest;
    c. Hyperemesis gravidarum;
    d. Pre-eclampsia;
   or any similar condition associated with the management of a difficult pregnancy not consisting of a nosologically distinct Complication of Pregnancy.

**"Disability"** means Total Disability or Residual Disability.

**"Earnings"** is defined in the Schedule of Benefits.

**"Elimination Period"** means the number of days, at the beginning of each period of continuous Disability, stated in the Schedule of Benefits, that the Insured must be Disabled before Disability Benefits become payable.

**"Injury"** means bodily injury caused by an accident which results in a loss, directly and independently of all other causes. The Injury must occur and disability must begin while the Insured's coverage is in force.

**"Insured"** means an eligible member of the Holder whose insurance is in force under the terms of the Policy.

**"Insured Occupation Period"** means that period shown in Statement 8 of the Application.

**"Loss of Earnings Ratio"** is equal to:

$\dfrac{A - B}{A}$ where   $A$ = Pre-Disability Earnings.
                           $B$ = Monthly Earnings during Residual Disability.

**"Monthly Benefit"** and **"Maximum Period Payable"** mean that benefit and that period shown in the Schedule of Benefits which apply to the Insured.

**"Pre-Disability Earnings"** is defined in the Schedule of Benefits.

**"Pre-existing Condition"** means a condition for which symptoms existed which would cause an ordinarily prudent person to seek diagnosis, care or treatment within a 12 month period prior to the Insured's effective date of insurance; or a condition for which medical advice or treatment was rendered, prescribed or recommended within a 12 month period prior to the Insured's effective date of insurance.

A condition will no longer be pre-existing if:
1. No medical advice or treatment was rendered, prescribed or recommended for 12 consecutive months after the Insured's effective date of insurance; or
2. The Insured's insurance has been in effect for 24 months.

If an Insured was insured under the Previous Policy, the period the Insured has been insured under the Policy will be from the Effective Date under the Previous Policy but only for the amount of the previous coverage.

"**Previous Policy**", if any, means the policy stated in the Application from which the Insured transferred at the time of termination of insurance thereunder.

"**Residual Disability**" means that because of Injury or Sickness the Insured while unable to perform all of the material duties of his regular occupation on a full-time basis, is:
1. Gainfully employed in any occupation on a full-time or part-time basis;
2. Under the regular care of a physician, other than himself; and
3. Disabled to the extent that the Loss of Earnings Ratio is 20% or more due to the same Injury or Sickness.

"**Schedule of Benefits**" means Statement 9 of the Application for the Policy.

"**Sickness**" means the sickness or disease causing loss which begins while the Insured's coverage is in force.

"**Total Disability**" means that, during the Elimination Period and the Insured Occupation Period, the Insured, because of Injury or Sickness, is:
1. Continuously unable to perform the substantial and material duties of his regular occupation;
2. Under the regular care of a licensed physician other than himself; and
3. Not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.
Thereafter, "Total Disability" means that, because of Injury or Sickness, the Insured is:
1. Continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and
2. Under the regular care of a licensed physician other than himself.

"**We**", "**Our**" or "**Us**" means the Continental Casualty Company, Chicago, Illinois.

## PART 4

### ELIGIBILITY AND EFFECTIVE DATE OF INDIVIDUAL INSURANCE

All persons defined in the Eligibility Section of the Application can apply for insurance under the Policy.  Insurance for eligible persons who apply and are accepted by Us shall take effect:
1. On the Effective Date of the Policy for those applying and accepted on or before such date; or
2. As stated in the Insured's certificate schedule for those applying and accepted after the Effective Date of the Policy.

Such insurance will not become effective unless:
1. The applicable first premium has been paid; and
2. The eligible person is Actively-at-Work at his occupation on the date his insurance would become effective.

If, because of Injury or Sickness, an eligible person is not Actively-at-Work at his occupation on the date his insurance would otherwise take effect, insurance will take effect on the day after such person returns to full-time work for a continuous period of 30 days.

## PART 5

### DISABILITY BENEFITS

### GENERAL BENEFIT INFORMATION

1. The Elimination Period, the Monthly Benefit, and the Maximum Period Payable are shown in the Schedule of Benefits.
2. Disability benefits are not payable during the Elimination Period nor beyond the Maximum Period Payable.
3. Total benefits payable for Total Disability and Residual Disability shall not exceed the Maximum Period Payable.
4. We will only pay Disability that begins while the Insured's coverage is in force.  Termination of such coverage will not affect a claim for Disability that begins before termination.
5. If a benefit is payable for a period less than 1 month, We will pay 1/30th of the Monthly Benefit for each day of Disability.

### TOTAL DISABILITY BENEFIT

We will pay the Monthly Benefit for each month of Total Disability which continues after the Elimination Period.

### RESIDUAL DISABILITY BENEFIT

We will pay a Residual Disability Benefit for each month of Residual Disability which follows:
(1) The Elimination Period; or

(2) A period for which Total Disability Benefits were payable.

The Residual Disability Benefit will not be payable during the Elimination Period. The amount payable will be equal to the Monthly Benefit times the Loss of Earnings Ratio. If the Loss of Earnings Ratio is 80% or more, it will be considered 100%.

Residual Disability Benefits will cease on the earliest of the following to occur:
    (1) The date the Loss of Earnings is less than 20%; or
    (2) The end of the Maximum Period Payable.

## WAIVER OF PREMIUM

If the Insured becomes Totally Disabled before age 60 and benefits become payable under the Policy for 6 successive months, We will waive any subsequent premium that becomes due for as long as benefits are payable for the Total Disability. During this period, the Insured's coverage will remain in force.

When the Insured is no longer eligible for Waiver of Premium his coverage can be continued in force by payment of the premiums that becomes due subject to the Policy provisions.

## RECURRENT DISABILITY

If Disability for which benefits were payable ends but recurs due to the same or related causes less than 6 months after the end of a prior Disability, it will be considered a resumption of the prior Disability. Such recurrent Disability shall be subject to the terms of the Policy that were in effect at the time the prior Disability began.

Disability due to the same or related causes, which recurs 6 months or more after the end of a prior Disability shall be subject to: (1) A new Elimination Period; (2) A new Maximum Benefit Period; (3) The other terms of the Policy that are in effect on the date the Disability recurs.

Disability must recur while the Insured's coverage is in force under the Policy.

## SURVIVOR INCOME BENEFIT

If an Insured dies after having received the Total Disability Benefit provided by the Policy for at least 90 consecutive days and during a period for which benefits are payable, We will pay the designated beneficiary, if living, a Survivor Income Benefit. This benefit is equal to 50% of the monthly amount the Insured was last entitled to receive for the month prior to his death.

The Survivor Income Benefit shall be payable on a monthly basis immediately after We receive written proof of the Insured's death. The benefit will end on the earliest to occur:

1. 2 monthly payments have been made to the beneficiary;

2. The end of the Maximum Period Payable; or

3. The death of the designated beneficiary.

## EXCLUSIONS

The Policy does not cover any loss caused by or resulting from:

1. Declared or undeclared war or an act of either;
2. An intentionally self-inflicted injury, while sane or insane;
3. Disability beyond 24 months after the Elimination Period if it is due to mental or emotional disorders, alcoholism or drug addiction;
4. Pregnancy or childbirth, except Complications of Pregnancy;
5. Participation in an illegal occupation or attempt to commit a felony;
6. A Pre-existing Condition;
7. Any condition which is the subject of a waiver or Impairment rider attached to Your certificate.

The Policy does not cover any loss commencing while an Insured is in the service of the armed forces of any country. Orders to active military service for training purposes of 2 months or less shall not, for the purposes of this exclusion, constitute service in the armed forces of any country. Upon notification to Us of entering the armed forces of any country, We will return to the Insured pro-rata any premium paid for any period during which the Insured is in such service.

Benefits shall be payable under the Policy either for Injury or Sickness, but not for both, during any concurrent period of Disability.

The Policy does not cover any loss incurred by the Insured resulting from Injury or Sickness for which benefits are payable under the Previous Policy.

## PART 6

### INDIVIDUAL TERMINATIONS

The Insured's coverage will terminate on the earliest of the following dates:
1. The date the Policy is terminated;
2. The date at the end of the period for which premium has been paid, if the required premium is not paid;
3. The date You reach the termination age shown in the Schedule of Benefits; or
4. On the date that the Insured:
   a. Is retired or ceases to be actively engaged in full-time employment;
   b. Is no longer associated with the Holder in a capacity making him eligible for insurance.

However, Our acceptance of premiums beyond the date of continued eligibility for coverage will not continue coverage beyond the dates specified in a. & b. above. Any unearned premium will be refunded.

## PART 7

### CERTIFICATES

We will issue an individual certificate for delivery to each Insured. The certificate will describe the benefits provided by the Policy, to whom benefits are payable, the limits of the Policy and where the Policy may be inspected.

## PART 8

### CLAIMS

**Notice of Claim:** Written notice must be given to Us within 30 days after any loss covered by the Policy. If notice cannot be given within that time, it must be given as soon as reasonably possible.

The notice will be sufficient if it identifies the Insured and the Policy. It must be sent to Us at Our Home Office, CNA Plaza, Chicago, Illinois 60685 or given to Our agent.

**Claim Forms:** After We receive the written notice of claim, We will furnish claim forms within 15 days. If We do not, the claimant will be considered to have met the requirements for written proof of loss if We are given written proof of the extent and nature of the loss.

**Written Proof of Loss:** Written proof of loss must be given to Us within 90 days after the date of such loss. If it is not reasonably possible, the claim is not affected if the proof is given as soon as possible. Unless the Insured is legally incapacitated, written proof must be given within one year of the time it is otherwise due.

**Time of Payment of Claim:** Benefits payable under the Policy for any loss which requires periodic payment will be paid monthly subject to receipt of due written proof of loss. Any balance remaining unpaid upon termination of liability will be paid upon receipt of due written proof.

**Payment of Claim:** All benefits are paid to the Insured or the Insured's estate, unless the Insured has assigned them elsewhere.

If benefits are payable to the estate, We may pay up to $1,000.00 to any relative of the Insured whom We feel is entitled to the benefits. Any payment made in good faith will discharge Us to the extent of the payment.

**Misstatement of Age:** If the age of an Insured has been misstated, the benefit payable under the Policy will be in an amount that the premiums paid would have purchased at the Insured's true age. If coverage would not have been issued, We will refund the premium paid.

**Physical Examination:** At Our expense, We have the right to have a physician examine the Insured as often as reasonable necessary while the claim is pending.

## PART 9

### PREMIUMS

**Payment of Premium:** Premium for the Policy is computed as stated in Statement 10 of the Application. Premiums are payable in United States currency, to Us when due, subject to the Grace Period.

We have the right to change premium rate for this Policy on any premium due date.

**Grace Period:** A grace period of 31 days is allowed for the payment of each premium due after the first premium. The Insured's coverage will remain in force during the grace period. However, if at least 31 days before the premium due date We have sent written notice to the Holder's last address shown in Our records of Our intent to non-renew the Policy, or if the Holder gives Us written notice to non-renew the Policy, the grace period will not apply to any period after the date the non-renewal is to be effective.

**Refund of Unearned Premium at Death:** If an Insured dies, We will make a pro-rata refund of premium paid for a period beyond the date of death.

## PART 10

### THE CONTRACT

**Entire Contract; Changes:** The Policy, the Application, the individual applications of the Insureds and any attached papers constitute the entire contract between the parties.

Any statement made by the Holder or by any Insured shall, in the absence of fraud, be deemed a representation and not a warranty. No such statement shall void the insurance, reduce the benefits or be used in defense to a claim under the Policy unless it is in writing, a copy of which has been furnished to the Holder or the Insured, whoever made the statement. No such statement of the Holder shall be used to void the Policy after it has been in force for two years. Nor shall a statement of the Insured, in the absence of fraud, be used in defense to a claim for disability commencing after such person's coverage has been in force for two years.

No change in the Policy is valid unless approved in writing on the Policy by one of Our officers. No agent has the right to change the Policy or to waive any of its provisions.

**Legal Actions:** No action at law or in equity can be brought until after 60 days following the date written proof of loss was given. No action can be brought after three years from the date written proof is required.

**Conformity with State Statutes:** If any provision of the Policy conflicts with the statutes of the state in which the Policy was delivered or issued, it is automatically changed to meet the minimum requirements of the statute.

**Worker's Compensation:** The Policy is not in lieu of and does not affect any requirements for coverage by Workers' Compensation Insurance.

# Continental Casualty Company

**6**

**78**

CNA Plaza                    A Stock Company
Chicago, Illinois 60685

## EXTRATERRITORIAL RIDER

This rider is attached to and made a part of Group Policy 01-A-1919 issued by Continental Casualty Company, and is effective January 1, 1996.

Mississippi requires certain benefits and provisions for its residents.

This Policy is amended, solely with respect to residents of Mississippi, so that any rights or Benefits with respect to:

  AMENDMENT TO POLICY—UNIFORM PROVISIONS—T1-104052-A-23

will not be less than as described on the following pages. These are minimums. All provisions, definitions, limitations and conditions of the Policy which are not inconsistent with these rights and benefits apply to them. If the Policy, without this rider, would provide benefits greater than these minimums, then benefits will be paid and rights granted under the terms of the Policy and not as described herein. If the Policy, without this rider, would provide a benefit or right less than these minimums, then benefits will be paid and rights granted as described herein and not as determined by the Policy without this rider.

*D. H. Choskassian*

Chairman of the Board

*Q. M. Longg*

Secretary

R1-103287-A

The Laws of Mississippi Require

Certain Amendments to the Policy

Relative to the following Uniform Provisions

Notice of Claims;

Time and Payment of Claims; and

Physical Examination and Autopsy.

The following provisions are added to Group Policy 01-A-1919, and Certificates issued thereunder, for Mississippi residents only and replace and supercede similar provisions contained therein.

**NOTICE OF CLAIM**

Written notice of claim must be given to Us within 30 days after the occurrence, or the start of any loss covered by the Accident and Health Insurance Provisions of the Policy, or as soon thereafter as is reasonably possible.

Notice given by or on behalf of the claimant to Us at Our Home Office, or to Our authorized agent with information sufficient to identify the insured employee shall be deemed notice to Us.

**TIME AND PAYMENT OF CLAIMS**

We will pay benefits due the MEMBER as soon as We receive due written proof of loss; any loss for which the Policy provides periodic payment will be paid Monthly.

Benefits for the MEMBER'S loss of life will be payable in accordance with the beneficiary designation; if no such designation is in effect on the MEMBER'S date of death, the benefits will be payable to the MEMBER'S estate. Any other benefits unpaid at the MEMBER'S death may, at Our option, be paid either to such beneficiary or to such estate. All other benefits will be payable to the MEMBER.

If any benefit becomes payable to the MEMBER'S estate, or to someone who is a minor or otherwise not competent to give a valid release, We may pay such benefit up to $1,000.00 to any relative by blood, or connection by marriage of the MEMBER or beneficiary who is deemed by Us to be equitably entitled to it. Any such payment made in good faith shall fully discharge Us to the extent of the payment.

Benefits will be paid not more than 45 days after receipt of written proof of loss. If a valid claim is not paid within said 45 day period such payment will be increased by the payment of 1 1/2% interest per month until the claim is paid. If We do not pay any valid claim when due, the MEMBER may bring action to secure such benefits and any other damages.

**PHYSICAL EXAMINATION**

We, at Our own expense, shall have the right and opportunity to examine the person of any MEMBER whose Injury or Sickness is the basis of claim when and as often as We may reasonably require during the pendency of a claim hereunder.

T1-104052-A-23

# Continental Casualty Company

6
78

CNA Plaza
Chicago, Illinois 60685

A Stock Company

## EXTRATERRITORIAL RIDER

This rider is attached to and made a part of the Certificate issued to residents of Mississippi under Group Policy 01-A-1919 by Continental Casualty Company, and is effective concurrently with the Certificate to which it is attached.

Mississippi requires certain benefits and provisions for its residents.

This Certificate is amended, solely with respect to residents of Mississippi, so that any rights or benefits with respect to:

AMENDMENT TO POLICY -- UNIFORM PROVISIONS----T1-104052-A-23

will not be less than as described on the following pages. These are minimums. All provisions, definitions, limitations and conditions of The Policy which are not inconsistent with these rights and benefits apply to them. If The Policy, without this rider, would provide benefits greater than these minimums, then benefits will be paid and rights granted under the terms of The Policy and not as described herein. If The Policy, without this rider, would provide a benefit or right less than these minimums, then benefits will be paid and rights granted as described herein and not as determined by The Policy without the rider.

*D. H. Chookaszian*

Chairman of the Board

X1-103288-A-23

(MA-BNAI-23)
(XI23BNAI.01A)

The Laws of Mississippi Require

Certain Amendments to the Policy

Relative to the following Uniform Provisions

Notice of Claims;

Time and Payment of Claims; and

Physical Examination and Autopsy.

The following provisions are added to Group Policy 01-A-1919, and Certificates issued thereunder, for Mississippi residents only and replace and supersede similar provisions contained therein.

## NOTICE OF CLAIM

Written notice of claim must be given to Us within 30 days after the occurrence, or the start of any loss covered by the Accident and Health Insurance Provisions of the Policy, or as soon thereafter as is reasonably possible.

Notice given by or on behalf of the claimant to Us at Our Home Office, or to Our authorized agent with information sufficient to identify the insured employee shall be deemed notice to Us.

## TIME AND PAYMENT OF CLAIMS

We will pay benefits due the MEMBER as soon as We receive due written proof of loss; any loss for which the Policy provides periodic payment will be paid Monthly.

Benefits for the MEMBER'S loss of life will be payable in accordance with the beneficiary designation; if no such designation is in effect on the MEMBER'S date of death, the benefits will be payable to the MEMBER'S estate. Any other benefits unpaid at the MEMBER'S death may, at Our option, be paid either to such beneficiary or to such estate. All other benefits will be payable to the MEMBER.

If any benefit becomes payable to the MEMBER'S estate, or to someone who is a minor or otherwise not competent to give a valid release, We may pay such benefit up to $1,000.00 to any relative by blood, or connection by marriage of the MEMBER or beneficiary who is deemed by Us to be equitably entitled to it. Any such payment made in good faith shall fully discharge Us to the extent of the payment.

Benefits will be paid not more than 45 days after receipt of written proof of loss. If a valid claim is not paid within said 45 day period such payment will be increased by the payment of 1 1/2% interest per month until the claim is paid. If We do not pay any valid claim when due, the MEMBER may bring action to secure such benefits and any other damages.

## PHYSICAL EXAMINATION

We, at Our own expense, shall have the right and opportunity to examine the person of any MEMBER whose Injury or Sickness is the basis of claim when and as often as We may reasonably require during the tendency of a claim hereunder.