IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT DUNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07-cv-6601 |
| v. ) | |
| ) | Judge Manning |
| THE HARTFORD LIFE AND ) | Magistrate Judge Valdez |
| ACCIDENT INSURANCE COMPANY ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH
SUBPOENAS FOR CERTAIN RECORDS**

Defendant, HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY ("Hartford"), by its attorneys Donald A. Murday, Joseph R. Jeffery, and Chittenden, Murday & Novotny LLC, submits this Memorandum In Support Of Its Motion to Quash Subpoenas for Certain Records.

### I.   INTRODUCTION

Plaintiff asserts two claims in his Amended Complaint. The first is for breach of contract. Plaintiff contends that he is entitled to disability benefits under a group insurance policy ("Policy") that promises monthly benefits to covered individuals who have a "Total Disability," as that phrase is defined in the Policy. Plaintiff alleges that he has a "Total Disability" and that Hartford breached the contract when it denied him Policy benefits. Plaintiff also asserts that Hartford vexatiously and unreasonably denied his claim for Policy benefits and seeks statutory penalties and attorneys' fees and costs under Section 155 of the Illinois Insurance Code. Thus, the issues relevant to the parties' claims and defenses are whether Plaintiff had a "Total Disability" under the Policy, whether Hartford breached the policy contract when it

denied Plaintiff's claim for benefits, and whether Hartford's denial of that claim was vexatious and unreasonable.

Plaintiff proposes a fishing expedition to investigate whether the opinion of the medical consultant Hartford retained to review Plaintiff's medical records was motivated by a bias in favor of Hartford. To that end, Plaintiff served subpoenas on the medical consultant, Robert Y. Pick, M.D., and the consulting agency to which Hartford sent Plaintiff's file, the University Disability Consortium ("UDC"). The issue of bias is not remotely relevant to Plaintiff's actions for breach of contract and extra-contractual damages under the Illinois Insurance Code. Consequently, a significant portion of the records Plaintiff subpoenaed are not relevant to any party's claim or defense and, therefore, are beyond the scope of discovery permitted under the Federal Rules of Civil Procedure. Accordingly, this Court must quash Plaintiff's subpoenas for those records. Even if those materials were relevant to the parties' claims and defenses, the court must still prohibit their discovery because Plaintiff's descriptions of the documents being subpoenaed are impermissibly vague and overly broad.

## II.   BACKGROUND INFORMATION

The subpoenas to Dr. Pick and UDC each contained an Exhibit A describing the documents responsive to the subpoena. Counsel for the parties have discussed the exhibits and agree that the first four sentences in each exhibit are for documents directly related to the review of Plaintiff's medical records. In light of that agreement, Hartford has no objections to the documents described in those sentences. The last sentence of each Exhibit A, however, seeks documents (the "Subpoenaed Records") that are not remotely relevant to whether Plaintiff is eligible for benefits under his disability insurance policy or whether Hartford's denial of Plaintiff's claim was vexatious and unreasonable. Hartford objects to production of the

following Subpoenaed Records from Dr. Pick:

- "copies of any contractual relationship(s) you have with the Hartford, Hartford Life and Accident Insurance Company, Continental Casualty Company or any of their affiliates, and/or [UDC], including but not limited [to] the terms of those agreements;" and

- "record(s) of compensation received from either party in the form of IRS Form 1099 and or W-2 for the years 2006, 2007, and 2008."

Hartford similarly objects to production of the following Subpoenaed Records from UDC:

- "copies of any contractual relationship(s) you have with the Hartford, Hartford Life and Accident Insurance Company, Continental Casualty Company or any of their affiliates, and/or Dr. Robert Pick, including but not limited [to] the terms of those agreements;" and

- "record(s) of compensation received from either party including disclosure of any records or other evidence showing monies and claims received from Hartford Life and Accident Insurance Company, Continental Casualty Company (and other related affiliates) in 2006, 2007, and 2008 [redact information necessary to protect the privacy of other third parties];" and

- "information compiled detailing the number of claims involving a medical evaluation favorable or in support of payment of the claim and the number of claims alternatively unfavorable or not in support of payment of benefits."

Copies of the subpoenas to Dr. Pick and UDC are attached hereto as Exhibits 1 and 2, respectively.

Plaintiff began receiving Policy benefits in January 1997 after it was determined that he met the Policy's definition for "Total Disability."[1]  From that time through October 30, 2006,

---

[1] The Policy defines "Total Disability" to mean that "during the Elimination Period and the Insured Occupation Period, the Insured, because of Injury or Sickness, is:
  1. Continuously unable to perform the substantial and material duties of his regular occupation;
  2. Under the regular care of a licensed physician other than himself; and
  3. Not gainfully employed in any occupation for which he is or becomes qualified by education, training, or experience.
Thereafter, 'Total Disability' means that, because of Injury or Sickness, the Insured is:
  1. Continuously unable to engage in any occupation for which he is or becomes qualified by education, training, or experience, and
  2. Under the regular care of a licensed physician other than himself."

3

Plaintiff received monthly disability payments under the Policy. On October 30, 2006, after receiving new information from Plaintiff and his physician showing that Plaintiff no longer met the Policy's definition of Totally Disabled,[2] Hartford terminated Plaintiff's benefits. Hartford based its decision on an Attending Physician Statement from Plaintiff's physician, Avi J. Bernstein, M.D., advising that Plaintiff "can do sedentary work" subject to two restrictions: Plaintiff could not be required to stand for long periods of time and could not be "jostled." Hartford also based its decision on Plaintiff's statement that he only treated with Dr. Bernstein on an "as-needed basis" and that Plaintiff, as of December 2005, had not been treated by Dr. Bernstein for nearly two years. Finally, a Hartford Rehabilitation Case Manager reviewed the restrictions Dr. Bernstein described for Plaintiff and prepared an Assessment of Employability that identified three occupations Plaintiff was qualified and capable of performing: Inside Account Sales, Investment Specialist, and/or Financial Advisor.

Plaintiff appealed Hartford's termination of benefits and submitted additional information to support his claim. A Hartford appeals specialist reviewed and considered that information in connection with Plaintiff's appeal. Hartford also sent copies of Plaintiff's information to UDC for a medical records review. UDC assigned the file to Dr. Pick, a Board Certified physician in Orthopedic Surgery, for his review and comment. In his written comments, Dr. Pick summarized the relevant parts of the records and described a November 11, 2007 telephone conference with Dr. Bernstein. Dr. Bernstein confirmed that Plaintiff was capable of performing sedentary work activities for eight hours per day, so long as Plaintiff had the ability to change positions from sitting to standing when necessary. Based on his discussion with Dr. Bernstein

---

*Certificate of Insurance, p. 3, Exhibit A to Amended Complaint*.
[2] By October 2006, Plaintiff could only qualify for benefits under the Policy if he had a Total Disability that rendered him "[c]ontinuously unable to engage in *any occupation* for which he is or becomes qualified by education, training, or experience" and he was "[u]nder the regular care of a licensed physician other than himself." *Certificate of Insurance, p. 3, Exhibit A to Amended Complaint (emphasis added)*.

4

and his review of Plaintiff's information, Dr. Pick concluded that Plaintiff's physical restrictions and limitations did not prevent him from engaging in sedentary work activities on a full-time basis. Hartford considered the medical records in Plaintiff's file, Dr. Pick's comments on those medical records, Dr. Bernstein's statements to Dr. Pick about Plaintiff and his ability to work, and the Assessment of Employability report and concluded again that Plaintiff was not Totally Disabled because he was able to engage in occupations other than that of a broker/stock trader.

### III.   ARGUMENT

**A.   This Court Must Quash The Requests For The Subpoenaed Records Because Those Records Are Not Relevant To Any Party's Claims Or Defenses.**

Rule 26(b) of the Federal Rules of Civil Procedure sets the standard for the scope of permissible discovery: "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense …." Fed. R. Civ. P. 26(b). District courts have the power to quash subpoenas that seek information not relevant to the merits of a case. *See Automated Solutions Corp. v. Paragon Data Systems, Inc.*, 231 Fed. Appx. 495, 497, 2007 WL 1302115 *2 (7th Cir. 2007)(affirming the district court's decision to quash a subpoena on relevance grounds); *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 361 (8th Cir. 2003) (same); and *Stock v. Integrated Health Plan, Inc.*, 241 F.R.D. 618, 621 (S.D. Ill. 2007) (citing Advisory Committee Notes to 1970 Amendment to Rule 45(d) for the proposition that "[t]he scope of production under a subpoena is the same as the scope for discovery generally under Rule 26.").

**1.   The requested records are not relevant to Plaintiff's breach of contract action.**

The elements of a breach of contract claim are well known. To recover for breach of contract, a party must establish: (1) the existence of a valid and

5

enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Zirp-Burnham, LLC v. E. Terrell Assoc., Inc.*, 356 Ill. App.3d 590, 600, 826 N.E.2d 430, 439 (2005). The relevant questions here are whether Plaintiff "performed" under the contract (*i.e.*, whether he established he was Totally Disabled under the Policy) and whether Hartford breached the contract by terminating Plaintiff's benefits. Exploring the alleged bias of Hartford's medical consultants is not remotely probative of those issues.

Plaintiff contends that in October 2006 he was continuously unable to engage in any occupation for which he was qualified due to his Injury and was under the regular care of a licensed physician. In short, Plaintiff asserts that he established he was Totally Disabled and, therefore, had "performed" under the Policy. He further contends that Hartford's termination of his benefits was a breach of contract. Evidence establishing whether or not Dr. Pick or UDC harbored a bias favoring Hartford does not tend to make the existence of Plaintiff's "performance" under the contract or Hartford's alleged breach any more or less probable than it would be without that evidence. *See* Definition of "Relevancy", BLACK'S LAW DICTIONARY 1290 (6th ed. 1990); and Fed. R. Evid. 401. Accordingly, questions of bias are simply not relevant to Plaintiff's breach of contract claim.

The nature of the Subpoenaed Records suggests Plaintiff believes Dr. Pick and UDC are biased because Hartford compensated one or both of them in exchange for their services. The Seventh Circuit has addressed that issue in the context of a case arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001, *et seq.*, and concluded that Plaintiff's reasoning is unfounded.

> These physicians were not employees of the company, they did not fail to analyze relevant medical evidence, and the claimant has not presented any evidence to

> demonstrate a prima facie case of misconduct or conflict of interest. *The fact that [an insurance company] has compensated physicians for their consulting services is not, in and of itself, sufficient to establish a conflict of interest worthy of further discovery…. [T]here is no reason to assume independent medical consultants are not impartial when evaluating medical records.*

*Semien v. Life Ins. Co. of North America*, 436 F.3d 805, 814 (7th Cir. 2006) (emphasis added). The court's reasoning applies with equal force here. There is nothing inherently suspicious about compensating a medical professional for his or her professional services. If that were so, then the opinions of the physicians who treated Plaintiff must be viewed with equal suspicion. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832, 123 S.Ct. 1965 (2003) (noting "if a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor a finding of disabled."). Thus, even if Plaintiff were permitted to discover the Subpoenaed Records, the Seventh Circuit has made clear that those materials are not evidence of a bias on the part of a medical consultant. In short, this issue is a dead end for Plaintiff because the materials he seeks cannot prove what he wants them to prove.

Because the purported biases of Dr. Pick and/or UDC are not "relevant to any party's claim or defense," that issue is beyond the scope of discovery permitted under the Federal Rules of Civil Procedure and this Court must quash the subpoenas' requests for the Subpoenaed Records.

### 2. The requested records are not relevant to Plaintiff's statutory claim for vexatious and unreasonable denial of benefits.

Plaintiff's Count II seeks statutory penalties and attorneys' fees and costs under Section 155 of the Illinois Insurance Code. 215 ILCS 5/155. That Section "is the legislature's remedy to an insured or his assignee who encounters unnecessary difficulties" because an insurer vexatiously and unreasonably withholds policy benefits. *Peerless Enterprise, Inc. v. Kruse*, 317

7

Ill. App.3d 133, 144, 738 N.E.2d 988 (2000). To establish that a denial of benefits was vexatious and unreasonable, the court "must consider the *insurer's conduct* in the totality of the circumstances," namely, "the *insurer's attitude*, whether the insured was forced to file suit to recover, and whether the insured was deprived of the use of its property." *Peerless Enterprise, Inc. v. Kruse*, 317 Ill. App.3d 133, 144, 738 N.E.2d 988 (2000)(emphasis added).

The point here is that the statute examines *the insurer's actions* for vexatious and unreasonable conduct associated with the denial of a claim. Whether the comments of those with whom Hartford consults on a benefits decision are biased is simply not relevant to a claim under Section 155 because those biases say nothing about whether *Hartford* acted vexatiously or unreasonably when it terminated Plaintiff's benefits. To illustrate this point, consider what Plaintiff's argument under Section 155 would look like if Dr. Pick agreed with Plaintiff's position and Hartford terminated Plaintiff's benefits anyway. Plaintiff would undoubtedly argue that Hartford, by ignoring Dr. Pick's opinion, had acted unreasonably and vexatiously in terminating his benefits. The focus of that argument is not Dr. Pick but Hartford and how it decided Plaintiff's claim. That is consistent with Section 155 because the argument examines *Hartford's conduct*. Thus, the illustration shows it is not the substance of Dr. Pick's comments – or any alleged bias behind them – that is relevant to a claim under Section 155, but, rather, what Hartford does with those comments that matter.

Evidence concerning whether or not Dr. Pick or UDC was biased in favor of Hartford does not make Hartford's termination of benefits any more or less vexatious or unreasonable than it would be in the absence of any evidence of such bias. Accordingly, the bias issue is not relevant to Plaintiff's Section 155 claim. Because the bias issue is not relevant to the parties' claims and defenses, the Subpoenaed Records, which go to the bias issue, are also not relevant to

8

the claims and defenses in this action. Accordingly, the Subpoenaed Records are outside the scope of permissible discovery and this Court must quash Plaintiff's subpoenas for those records.

**B.      This Court Must Quash The Requests For The Subpoenaed Records Because The Requests Are Irrelevant, Overbroad, And Impermissibly Vague.**

Even if the alleged biases of Dr. Pick and UDC were relevant to Plaintiff's claims, which they are not, the Subpoenaed Records are not relevant to establishing bias. Moreover, Plaintiff's description of the materials he seeks is overly broad and impermissibly vague. Consequently, the subpoenas impose an undue burden on Dr. Pick and UDC and must be quashed.

District courts have the power to prohibit discovery in order to protect parties or persons from discovery that imposes an undue burden. Fed. R. Civ. P. 26(c) and 45(c)(3)(A). When determining whether a records subpoena imposes an undue burden, the court "must balance the burden of compliance against the benefits of the requested production." *Bond v. Utreras*, 2006 WL 1806387 *4 (N.D. Ill. 2006). That inquiry "turns on such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.*

**1.      Plaintiff's subpoena request for contracts is not relevant to a bias argument and is impermissibly vague.**

Both subpoenas seek "copies of any contractual relationship(s) [that Dr. Pick and/or UDC] have with the Hartford, Hartford Life and Accident Insurance Company, Continental Casualty Company or any of their affiliates …." Plaintiff's request for copies of contracts between Dr. Pick and/or UDC and "the Hartford," Continental Casualty Company, "or any of their affiliates" is not relevant to Plaintiff's claims or to his efforts to establish bias on the part of Dr. Pick and UDC toward Defendant, *Hartford Life and Accident Insurance Company*. Hartford Life and Accident Insurance Company (referred to herein as "Hartford") is the entity that

9

referred Plaintiff's file to UDC and it is the party obligated to pay any benefits that may be due. Thus, even if the bias issue were relevant to either party's claims or defenses, which it is not, the contracts, if any, between Dr. Pick and/or UDC and "the Hartford," Continental Casualty Company, "or any of their affiliates" are not relevant to Plaintiff's claims against Hartford Life and Accident Insurance Company. Furthermore, because Hartford Life and Accident Insurance Company is not a party to any of those contracts, the contracts are not probative of the bias Plaintiff seeks to establish with his subpoenas.

Similarly, the subpoenas seek copies of contracts between Dr. Pick and UDC. These records are plainly not relevant to Plaintiff's actions against *Hartford* for breach of contract and vexatious and unreasonable denial of Plaintiff's claim or for establishing a bias in favor of Hartford. Accordingly, the requested contracts are beyond the scope of permissible discovery.

Plaintiff's request for copies of contracts between Dr. Pick and/or UDC and "the Hartford" or any "affiliate" of "the Hartford," Hartford Life and Accident Insurance Company, and Continental Casualty Company lacks the particularity required for Dr. Pick, UDC, Hartford, and the court to determine what documents are being subpoenaed. "The Hartford" is not a legal entity and Plaintiff does not define what constitutes an "affiliate." Consequently, the subpoena request is impermissibly vague.

**2.   Plaintiff's subpoena request for records of compensation and claims received are impermissibly vague and overly broad.**

The subpoenas to Dr. Pick and UDC also seek "record(s) of compensation received from either party…." It is not clear from the subpoena who the phrase "either party" refers to. Accordingly, the subpoena is impermissibly vague because it lacks the particularity required for Dr. Pick, UDC, Hartford, and the court to ascertain precisely what documents are being requested. To the extent the request seeks records showing compensation received from "the

10

Hartford," Continental Casualty Company, "or any of their affiliates," the request is irrelevant because Hartford Life and Accident Insurance Company is the only insurer relevant to Plaintiff's claims for breach of contract and violations of Illinois' Insurance Code.

The subpoena to UDC has an additional problem: the request for "record(s) of compensation received from either party" is overly broad. Because Plaintiff failed to reasonably specify the documents he seeks, the subpoena literally seeks every single record reflecting any form of compensation paid by "either party" for 2006, 2007, and 2008. Presumably, this would include every check, invoice, billing inquiry, cover letter, account statement, and electronically stored file recording the same that UDC has for the three-year period. Even if Plaintiff could overcome the relevance and vagueness problems that preclude production of such materials, there is simply no need in the context of Plaintiff's claims against Hartford for the production of what could be (depending on what "either party" refers to) such a broad range of information.

The UDC subpoena seeking "records or other evidence showing monies and claims received from Hartford Life and Accident Insurance Company, Continental Casualty Company (and other related affiliates) in 2006, 2007, and 2008" is similarly overbroad. As written, the subpoena would require UDC to produce *every* document, including electronically stored information, that reflects "monies and claims" received by UDC for a three-year period. In addition to the compensation documents described above, this request would require UDC to produce, *inter alia*, all comments and opinions written for every Hartford claim UDC reviewed, all referral communications between Hartford and UDC, and all medical files for each insured submitted in connection with those referrals for the three-year period covering 2006-2008. Putting aside the relevance and vagueness problems with the subpoenas, the production of such a broad range of documents and information is simply not warranted where the only issues are

11

whether Hartford breached the policy contract when it terminated Plaintiff's benefits and whether Hartford's termination of those benefits was vexatious and unreasonable.

> **3. Plaintiff's subpoena request for records summarizing UDC's history of making "favorable" or "unfavorable" reviews is irrelevant, overbroad, and impermissibly vague.**

Plaintiff seeks records, if any, "detailing the number of claims involving a medical evaluation favorable or in support of payment of the claim and the number of claims alternatively unfavorable or not in support of payment of benefits." The information sought is not relevant to establishing whether Plaintiff performed or Hartford breached the Policy, nor is it relevant to determining whether Hartford acted vexatiously and unreasonably when it denied Plaintiff's claim for benefits.

Furthermore, the request is overbroad because it seeks information concerning all claims UDC has ever handled for any insurance company under any type of policy. The request is also overbroad because it is not limited to any specific time period. A records subpoena that fails to limit its request to a relevant time period, or fails to justify the need for an unlimited time period, is overbroad and subject to being quashed. *Bond v. Utreras*, 2006 WL 1806387 *4 (N.D. Ill. 2006).

The request is also impermissibly vague. The subpoena does not provide any objective criteria by which Dr. Pick, UDC, Hartford, or the court can ascertain what constitutes an "evaluation favorable or in support of payment of the claim" or evaluations that are "alternatively unfavorable or not in support of payment of benefits," and Plaintiff does not define the terms he uses to describe his requests. Accordingly, it is impossible to tell what documents are being subpoenaed. Furthermore, the request is unduly burdensome because compiling that information would entail a review the claim file for every claim UDC has handled.

The Subpoenaed Records are either irrelevant, overly broad, impermissibly vague, or all of the above.  Because the Subpoenaed Records go to bias, an issue that is not remotely relevant to the claims and defenses in this action, Plaintiff has no need for those Records, at least not in this case.  The balance of the factors confirms that the burdens of complying with the subpoena far outweigh any benefit to be gained by requiring Dr. Pick and UDC to comply with them.  Accordingly, this Court must enter an order quashing Plaintiff's subpoena request for the Subpoenaed Records or, alternatively, enter a protective order directing that the discovery not be had.

## CONCLUSION

Plaintiff's stated purpose for seeking the Subpoenaed Records is to explore what he believes are the biases of Dr. Pick and UDC in favor of Hartford.  The bias of Hartford's consultants, however, is not relevant to Plaintiff's claims for breach of contract or violations of Illinois' Insurance Code.  Consequently, the Subpoenaed Records are outside the scope of discovery permitted under Fed. R. Civ. P. 26(b).  Even if the bias issue were relevant to Plaintiff's claims, Plaintiff's requests for the Subpoenaed Records are so flawed that they constitute an undue burden.  Because of the foregoing, this Court must enter an order quashing Plaintiff's requests for the Subpoenaed Records or, alternatively, enter an order directing that discovery of the Subpoenaed Records not be had.

                **HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

                By:  /s/Joseph R. Jeffery
                    One of its Attorneys

Donald A. Murday
Joseph R. Jeffery
CHITTENDEN, MURDAY & NOVOTNY LLC
303 West Madison Street, Suite 1400
Chicago, Illinois 60606
(312) 281-3600
(312) 281-3678 (fax)
O:\HA815\41091-Dunn\PLDGS\Memo to Quash rev 4.doc

14

*Certificate of Service*

I hereby certify that on **May 22, 2008** I electronically filed the foregoing Defendant Hartford Life and Accident Insurance Company's Memorandum of Law in Support of Motion to Quash Subpoenas for Certain Records with the Clerk of the U.S. District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system which sent notification of such filing to the following CM/ECF registered participants:

>David A. Bryant, Esq.
>Daley, DeBofsky & Bryant
>55 W. Monroe Street, Suite 2440
>Chicago, Illinois  60603
>dabryant@ddbchicago.com

**DATED** this **22nd** day of **May, 2008.**

>_/s/ Joseph R. Jeffery
>CHITTENDEN, MURDAY & NOVOTNY LLC
>303 West Madison Street, Suite 1400
>Chicago, Illinois  60606
>(312) 281-3600
>(312) 281-3678 (fax)
>jjeffery@cmn-law.com